Gants, J.
According to her complaint, the plaintiff, Kim Lohnes (“Lohnes”), was hired as an account executive in the fall of 2000 by the defendant, Darwin Partners, Inc. (“Darwin”), a staffing agency that places workers with other companies. As an account executive, her job was to sell customers the services of temporary workers in the computer field, which Darwin would then hire and place at these companies on a contract basis. When she was hired, she was presented with a schedule on which her compensation would be based, including commissions. After Lohnes had worked at Darwin for roughly a year and had established herself as its top salesperson in terms of business volume, Darwin declared a new, less gener *158 ous compensation schedule that applied not only to business that Darwin was to obtain in the future but also to business she had already secured. On January 7, 2002, one day after she received her second favorable evaluation of her performance, Lohnes was fired, effective the next day. While Darwin told her that she was fired for deficiencies in her performance, Lohnes contends that she was fired because she complained to Darwin’s Chief Executive Officer and Treasurer about the reduction in her commission rate, especially as to sales she had already made, and to deprive her of compensation she had earned before January 8, 2002.
Among the six counts that comprise Lohnes's complaint against Darwin are:
Count I, alleging violation of G.L.c. 149, §148 for Darwin’s failure to pay her commissions that she had already earned from placements completed before her termination date of January 8, 2002; Count II, alleging wrongful termination for firing her in retaliation for her complaints to Darwin’s Chief Executive Officer and Treasurer about Darwin’s reduction of the commissions she had already earned from completed placements.
Darwin now moves to dismiss Counts I and II for failure to state a claim. After hearing, for the reasons stated below, the motion to dismiss is DENIED.

DISCUSSION

When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the factual allegations of the complaint and all reasonable inferences favorable to the plaintiff which can be drawn from those allegations. Fairneny v. Savogran, 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The issue is whether the facts alleged, generously construed in favor of the plaintiff, state a valid legal claim that would warrant relief on any theory of law. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979).

Count I, alleging violation of G.L.c. 149, §148

G.L.c. 149, § 148 was intended primarily “to prevent unreasonable detention of wages” by requiring “regular and frequent payment." American Mutual Liability Ins. Co. v. Commissioner of Labor & Industries, 340 Mass. 144, 147 (1959). Although generally characterized as an act requiring the weekly payment of wages, see Commonwealth v. Savage, 31 Mass.App.Ct. 714, 716 (1991), the statute itself does not mandate weekly payment of wages. Rather, it establishes different deadlines for the payment of wages to a variety of different types of employees:
employers must pay most employees the wages earned by them “weekly or bi-weekly” within six days of the termination of the pay period; G.L.c. 149,§148;
“employees engaged in a bona fide executive, administrative or professional capacity as determined by the attorney general . . . may be paid bi-weekly or semi-monthly unless such employee elects at his own option to be paid monthly”; id. and
“employees engaged in agricultural work may be paid their wages monthly.” Id.
G.L.c. 149, §148 specifically applies to the payment of certain commissions:
This section shall apply, so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee, and commissions so determined and due such employees shall be subject to the provisions of section one hundred and fifty [providing a private civil cause of action with the assent of the Attorney General].

Id.

Accepting Lohnes’ allegations in her complaint as true, as I must on a motion to dismiss, Lohnes has alleged that she was deprived of the payment of commissions that had been definitely determined and were due to her for employee placements that were completed prior to her termination. Darwin contends that Lohnes’ commissions were neither definitely determined nor due until she serviced the accounts, but such disputes are not the stuff of a motion to dismiss.
Although Lohnes clearly alleges that she was an employee within the protection of G.L.c. 149, §148, and G.L.c. 149, §148 specifically includes the commissions in question within its purview, and Lohnes indisputably obtained the approval of the Attorney General to allege a violation of G.L.c. 149, §148 as a private cause of action, Darwin contends on a number of grounds that her allegations fail to state a cause of action. First, Darwin contends that Lohnes earned too much money to be protected under this statute, but there is nothing in the statute that limits its scope to those earning less than a certain amount of wages. Nor does Darwin attempt to identify what amount of earnings would place an employee outside the statute’s protection. While the Legislature certainly may have had in mind employees earning more meager wages and commissions than Lohnes when it enacted this statute, the Legislature did not limit its scope based on the amount of wages or commissions earned and due, and no such limit reasonably may be implied.
Second, Darwin relies on the inference made by the Appeals Court that, because the inclusion of commissions in G.L.c. 149, §148 was entitled “An Act relative to the weekly payment of commissions due to certain employees,” the payment of commissions are protected only for “employees who would ordinarily be paid on a weekly basis, such as retail salespeople, and for whom commissions constitute a significant part of weekly income.” Commonwealth v. Savage, 31 Mass.App.Ct. at 716. Even if the appellate courts were *159 to persist in making this inference, Lohnes alleges that she was paid bi-weekly (which is specifically approved in the statute as an appropriate time period to pay employees, including retail salespeople), and that her commissions constituted a significant part of her biweekly income. Therefore, even under this narrow interpretation, dismissal would not be appropriate.[1]
Finally, Darwin claims that these commissions fall outside the scope of G.L.c. 149, §148 because they were triggered by contingencies. All commissions are based on contingencies, such as the completion of a sale. If commissions were not protected by G.L.c. 149, §148 because they became payable only when something happened, then the Legislature would be engaged in a sham to have amended the statute to include commissions, because all (or virtually all) commissions would fall outside the protection of the statute. The Legislature intended no sham; it required simply that the commissions be “definitely determined,” meaning that the contingency must already have occurred and the amount due be capable of being precisely ascertained.
For all these reasons, Darwin’s motion to dismiss Count I is DENIED.

Count II, alleging wrongful termination

Darwin contends that Count II must be dismissed, because the remedy Lohnes seeks through this common-law cause of action is the same she seeks in her statutory claim under Count I. This argument is plainly wrong. In Count II, Lohnes essentially alleges that she was fired in retaliation for her complaints to Darwin’s Chief Executive Officer and Treasurer about being deprived of compensation she was entitled to under G.L.c. 149, §148. There can be no doubt that Lohnes’ claim of retaliation is legally separate and distinct from her claim alleging the wrongful denial of commissions under §148A. Indeed, it is possible for Lohnes to prevail on her claim of retaliation even if her claim as to the unlawful denial of commissions were to fail.
The more serious question is whether Count II can be brought as a common-law tort when there exists a statutory remedy for the retaliation alleged. See Mello v. Stop & Shop Companies, Inc., 402 Mass. 555, 557 (1988). The retaliation alleged, if proven, would be in violation of G.L.c. 149, §148A, which specifically prohibits an employer from penalizing any employee “in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provision of this chapter.” G.L.c. 149, §148A. An at-will employee may bring a common-law claim of wrongful termination when, as here, she alleges that she was terminated in violation of a policy position expressed by the Legislature to protect the rights of employees, “unless no common-law rule is needed because the Legislature has also prescribed a statutory remedy.” Id. Here, the Legislature has prescribed a statutory remedy for such retaliation — G.L.c. 149, §150 specifically permits an employee to bring a private cause of action alleging a violation of §148A with the approval of the Attorney General. With an adequate statutory remedy, there is no need for the common-law tort of wrongful termination to protect this public policy.
Since the allegations are the same regardless of whether the claim is brought under the statutory remedy or the common-law tort, this Court sees no need to dismiss Count II, but instead will simply treat it as a statutory claim of retaliation brought under G.L.c. 149, §150. See Ourfalian v. Arrow Manufacturing Company, 31 Mass.App.Ct. 294, 298 n. 5 (1991). Therefore, Darwin’s motion to dismiss Count II is also DENIED.

ORDER

For the reasons stated above, this Court hereby ORDERS that Darwin’s motion to dismiss Counts I and II is DENIED.

This Court also doubts that the appellate courts will persist In this inference for three reasons. First, it is contrary to the clear language of the statute, which imposes no such limits on protecting the payment of commissions that have been “definitely determined.” Second, it is difficult to justify an inference that commissions are limited to those ordinarily paid onaweekly basis when G.L.c. 149, §148 does not require weekly payments to anyone. Third, there is no logical reason why the Legislature would seek to protect small commissions involving multiple sales but not protect larger commissions based on fewer sales. From the language of the amendment that included commissions within the purview of G.L.c. 149, §148, the legislative purpose was plainly to protect salespersons who have earned “definitely determined” commissions, regardless of the manner in which those commissions have been earned.